IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AUTHOR ANDERSON,<br>  Plaintiff, | § § § | |
| v. | § § | No. 3:25-CV-2214-K-BW |
| JPMORGAN CHASE BANK, N.A.,<br>  Defendant. | § § § | Referred to U.S. Magistrate Judge[1] |

# FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is the Motion to Remand filed by Plaintiff Author Anderson, proceeding pro se in his action, on September 11, 2025. (Dkt. No. 8 ("Mot.").) Defendant JPMorgan Chase Bank, N.A. ("JPMC") filed a response in opposition to remand on October 1, 2025 (Dkt. No. 13 ("Resp.")), and Anderson filed a reply on October 7, 2025 (Dkt. No. 14 ("Reply")). The motion is ripe for determination.

Based on the briefing and applicable law, the undersigned recommends that the District Judge **DENY** Anderson's motion to remand. The undersigned further admonishes Anderson concerning his responsibility to follow court rules and orders.

---

[1] This pro se case was automatically referred to the undersigned magistrate judge for case management by Special Order 3-251. (*See* Dkt. No. 3.)

## I. BACKGROUND

Anderson originally filed this lawsuit in the 191st Judicial District Court for Dallas County, Texas on November 25, 2024. (*See* Dkt. No. 1 at ECF 32.)[2] Anderson asserted claims for negligence, invasion of privacy, and breach of contract relating to allegations that a bank employee made an unauthorized disclosure of Anderson's sensitive personal information to a third party. (*Id.*) On January 2, 2025, Anderson filed an amended petition expressly alleging that JPMC's duty of care, for purposes of his negligence claim, arose out of federal law—namely, the Gramm-Leach-Bliley Act—and the bank's internal policies. (Dkt. No. 1 at ECF 26.)

JPMC first removed the action on February 7, 2025, based on federal question jurisdiction, and the suit was docketed in Case No. 3:25-CV-312-E-BK. Anderson moved to remand the case, clarifying that he did not assert any federal cause of action and did not seek relief under the Gramm-Leach-Bliley Act. (No. 3:25-CV-312-E-BK, Dkt. No. 5.) JPMC did not oppose remand (No. 3:25-CV-312-E-BK, Dkt. No. 6), and United States District Judge Ada Brown ordered the case remanded to the 191st Judicial District Court on April 17, 2025 (No. 3:25-CV-312-E-BK, Dkt. No. 11).

Once back in state court, Anderson again amended his petition on July 17, 2025. (Dkt. No. 1 at ECF 75 ("2d Am. Compl.").) In this amended petition,

---

[2] The undersigned cites "ECF" to refer to the page assigned by the ECF system and displayed in blue on the top of the page.

Anderson alleged for the first time a specific amount sought, stating that he "seeks monetary relief over $250,000 but not more than $1,000,000." (*Id.* at ECF 76.) On August 15, 2025, JPMC again filed a notice of removal, this time alleging that jurisdiction was proper based on diversity of the parties under 28 U.S.C. § 1332(a). (Dkt. No. 1 at ECF 1.) Specifically, it alleged that, on information and belief, Anderson is a citizen and resident of Texas, and JPMC is a national banking association organized under the laws of Ohio with its principal office in Ohio. (*Id.* at ECF 4.) It further alleged that the amount in controversy is satisfied by Anderson's allegation that he seeks between $250,000 and $1 million. (*Id.* at ECF 3.)

## II.  LEGAL STANDARDS

A defendant may remove a case based on diversity jurisdiction under 28 U.S.C. § 1332(a) when there is diversity between the parties and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1441(a).  When assessing whether the amount in controversy has been met, a court first looks to the plaintiff's complaint.  *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  When the plaintiff demands a sum certain, that sum is presumed to be the amount in controversy so long as it is asserted in good faith.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014).  When the complaint does not demand a specified sum, the defendant's notice of removal must make a plausible allegation that the amount in controversy is more than $75,000.  *See id.*

If the plaintiff contests the amount in controversy, the defendant bears the burden to show by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional threshold. *Id.* at 88. The defendant meets its burden when it is apparent from the face of the complaint that the claims are likely to exceed $75,000 or the defendant puts forward evidence supporting a finding that the amount exceeds the threshold. *Manguno*, 276 F.3d at 723. Once a defendant satisfies its burden, "the plaintiff can defeat diversity jurisdiction only by showing to a legal certainty that the amount in controversy does not exceed the sum or value of $75,000, exclusive of interest and costs." *McCauley v. Kroger Co.*, No. 3:19-CV-2673-D, 2020 WL 208816, at *2 (N.D. Tex. Jan. 14, 2020) (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995)).

"To determine whether removal jurisdiction exists, a court must consider the claims in a plaintiff's state court petition as they exist at the time of removal." *Wagner v. FedEx Freight, Inc.*, 315 F. Supp. 3d 916, 919 (N.D. Tex. 2018) (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003), and *Manguno*, 276 F.3d at 723). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Id.* (quoting *Manguno*, 276 F.3d at 723).

### III. ANALYSIS

Anderson advances multiple arguments for remand: (1) JPMC fails to establish that the amount in controversy is satisfied, (2) a Texas court is the proper venue because the matter is governed by Texas law and JPMC has a "substantial

presence" in Texas, (3) Anderson does not assert any federal claims, and (4) JPMC should not be permitted to remove the action a second time after it having been remanded once. (Mot. at 1-2.) The undersigned addresses each one in turn.

**A. JPMC has sufficiently shown that the amount in controversy is at least $75,000.**

To determine whether the amount is controversy under § 1332(a) is met, the undersigned first looks to Anderson's state court petition. *See McCauley*, 2020 WL 208816, at *1. Anderson, in his second amended petition filed on July 17, expressly states that he seeks relief in an amount between $250,000 and $1 million, well beyond the jurisdictional threshold of $75,000. (*See* Dkt. No. 1 at ECF 76.) Because Anderson's petition demands this sum of monetary relief, that is deemed to be the amount in controversy if it is asserted in good faith. *See id.* (citing *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 84); *see also Escareno v. Stylecraft Home Collection Inc.*, 731 F. Supp. 3d 738, 744 (N.D. Tex. 2024) ("The required demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether the plaintiff is likely to win or be awarded everything he seeks." (quoting *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015) (cleaned up))).

Anderson does not dispute that his monetary demand in the amended petition was made in good faith. Rather, he suggests that JPMC should not be permitted to argue that the amount in controversy exceeds $75,000 because JPMC has

characterized Anderson's injuries as "speculative" and offered a sum far below the threshold amount to settle the case. (Mot. at 1.) These arguments, however, do not show to a legal certainty that the amount in controversy is below $75,000. *See Escareno*, 731 F. Supp. 3d at 744. That JPMC might have sought to settle the case for less than $75,000 does not establish that the amount in controversy does not exceed that amount. Rather, and particularly in light of Anderson's demand for much more, the difference between Anderson's demand and JPMC's settlement offer "merely establishes that a controversy exists." *See Williamson v. Perez*, No. CV 06-791-D-M2, 2007 WL 9711090, at *4 (M.D. La. Oct. 23, 2007).

**B. JPMC is a citizen of Ohio for purposes of diversity jurisdiction.**

"A district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants." *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003). "For diversity jurisdiction, the party asserting federal jurisdiction must 'distinctly and affirmatively allege [ ]' the citizenship of the parties." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

JPMC alleges complete diversity in its notice of removal. It alleges on information and belief that Anderson is a citizen of Texas, and Anderson does not dispute this. (Dkt. No. 1 at ECF 4.) JPMC alleges that it is a banking association organized under the laws of Ohio and principally located in Ohio. (*Id.*) That is sufficient to allege that it is a citizen of Ohio for diversity purposes. *Wachovia Bank v.*

*Schmidt*, 546 U.S. 303, 307 (2006) ("[A] national bank . . . is a citizen of the State in which its main office, as set forth in its articles of association, is located."); *see also* 28 U.S.C. § 1348 ("All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.").

Anderson argues that JPMC should be treated as a citizen of Texas based on its registration to do business in Texas, its presence in the state through numerous branch locations, and the fact that the harm alleged in the complaint has been suffered in Texas. The undersigned declines to adopt Anderson's reasoning because it is contrary to authority. *See Wachovia Bank*, 546 U.S. at 313–17 (rejecting the contention that, for diversity jurisdiction purposes, a bank is a citizen of each state where the bank has branch operations); *see also E-Dealer Direct v. Bank of Am., N.A.*, No. EP-21-CV-62-DB, 2021 WL 1381269, at *3 (W.D. Tex. Apr. 12, 2021).

**C. The absence of federal claims asserted by Anderson does not justify remand.**

Anderson additionally argues that the case should be remanded because he has not asserted any federal claims in this action. (Mot. at 3.) This is immaterial, as JPMC does not attempt to establish subject matter jurisdiction based on a federal question. Diversity and federal question are alternative grounds for establishing the existence of subject matter jurisdiction—JPMC is not required to show both.

**D. JPMC properly removed this case within 30 days after Anderson filed the amended petition providing grounds for removal based on diversity jurisdiction.**

Anderson implies that JPMC should not be permitted to remove the action based on diversity jurisdiction after having unsuccessfully removed the action once before on federal question jurisdiction. The Fifth Circuit has "held that a defendant has a 'right to seek subsequent removals after remand.'" *Ashford v. Aeroframe Servs., L.L.C.*, 96 F.4th 783, 794 (5th Cir. 2024) (quoting *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 492 (5th Cir. 1996)). "If the defendant fails to remove on its initial pleadings, it may file a second removal petition 'when subsequent pleadings or events reveal a new and different ground for removal.'" *Id.* (quoting *S.W.S. Erectors, Inc.*, 72 F.3d at 493). Here, Anderson filed his second amended petition on July 17, 2025, at which point Anderson demanded more than $250,000 and the case first became removable based on diversity jurisdiction. JPMC filed its notice of removal 30 days later, within the period permitted by 28 U.S.C. § 1446(b)(3).

**E. Anderson's promise to join additional defendants does not defeat jurisdiction.**

In reply, Anderson argues for the first time that his motion to remand should be granted because he plans to add two additional residents of Texas as defendants in this action. (Reply at 2.) The undersigned concludes that the argument does not justify remand for at least two reasons. First, Anderson raised this argument for the first time in his reply. "When a party raises a new argument 'for the first time in a reply, the district court must either give the other party an opportunity to respond or

-8-

decline to rely on the new arguments and evidence.'" *Killion v. Truist Bank*, No. 5:24-CV-194-H, 2025 WL 1531580, at *5 (N.D. Tex. May 29, 2025) (quoting *Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774 (5th Cir. 2024)). Although a court has discretion to allow the opposing party to file a sur-reply, "[t]he general rule is that courts should not rely on new arguments 'raised for the first time in a reply brief' and should only 'on occasion' consider such arguments in conjunction with a sur-reply." *Id.* (internal quotation marks and citation omitted).

Second, Anderson cannot secure remand by expressing his intent to join unnamed others in the future. The undersigned considers the jurisdictional facts as they exist at the time of removal. *See Louisiana v. Am. Nat'l Prop. Cas. Co.*, 746 F.3d 633, 637 (5th Cir. 2014) ("[J]urisdictional facts are determined at the time of removal, and consequently post-removal events do not affect . . . properly established jurisdiction."). As established above, JPMC has sufficiently demonstrated diversity between the parties and an amount in controversy exceeding $75,000. That Anderson might seek to add parties in the future does not establish a lack of jurisdiction now.

## IV. ADHERENCE TO COURT RULES AND ORDERS

Anderson was given instructions for pro se litigants when this action was removed. (Dkt. No. 4.) A few of those instructions bear reinforcing here because Anderson is responsible for following them and may be subject to sanctions for not doing so.

First, at the time this action was removed, Anderson was instructed to register as an Electronic Case Files ("ECF") user within 14 days. (Dkt. No. 4.) Then, after Anderson filed an unnecessary order because he had not registered as an ECF user and did not received electronic notice of an order (*see* Dkt. No. 10), the undersigned, on September 16, called Anderson's attention to N.D. Tex. L. Civ. R. 5.1(f), which requires him to register as an ECF user. (Dkt. No. 12.) Anderson was ordered to register as an ECF user within 14 days (*id.* at 2), but he still has not done so.

Second, JPMC noted in its response to Anderson's motion to remand that some of Anderson's cited authority apparently does not exist and, in one instance, was miscited. Additionally, in considering Anderson's reply, the undersigned observed that one of the two cases he cites—*Priester v. JP Morgan Chase Bank, N.A.*, 2012 WL 1900033 (N.D. Tex. May 25, 2012)—does not appear to exist. (Resp. at 9.) That Westlaw citation instead belongs to a case from the Southern District of Florida that is immaterial to the issues presented in Anderson's motion. And while a Westlaw search reveals cases titled as *Priester v. JPMorgan Chase Bank, N.A.*, none of them were decided in the Northern District of Texas or in 2012.

These serious errors and the general format of Anderson's briefing raise questions about whether Anderson is filing briefs without complying with his duties under the Federal Rules of Civil Procedure and the local court rules. *See, e.g.*, *Williams v. Cap. One Bank, N.A.*, No. CV 24-2032 (RC), 2025 WL 843285, at *7

(D.D.C. Mar. 18, 2025) (noting possible use of artificial intelligence in briefing from citations to nonexistent cases).

Anderson is not exempted by his pro se status from following court rules. *See* N.D. Tex. L. Civ. R. 83.14 ("Pro se parties must read and follow the local civil rules of this Court and the Federal Rules of Civil Procedure."); (*see also* Dkt. No. 4 ("You must read and follow the Federal Rules of Civil Procedure (FRCP), this court's Local Civil Rules, and the orders entered by a judge in your case.")). Rule 11(b) provides than an attorney or unrepresented party who files a brief does so certifying "that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*[,] . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2) (emphasis added).

"[I]t is no secret that generative AI programs are known to 'hallucinate' nonexistent cases, and with the advent of AI, courts have seen a rash of cases in which both counsel and *pro se* litigants have cited such fake, hallucinated cases in their briefs." *Willis v. U.S. Bank Nat'l Ass'n as Tr., Igloo Series Tr.*, No. 3:25-CV-516-BN, 2025 WL 1224273, at *2 (N.D. Tex. Apr. 28, 2025) (quoting *Sanders v. United States*, 176 Fed. Cl. 163, 169 (2025) (internal quotation marks omitted)). As a result, courts are imposing sanctions based on what often may be sloppy reliance on artificial intelligence. *See, e.g.*, *Hill v. Oklahoma*, No. CIV-25-522-SLP, 2025 WL

1840659, at *4 (W.D. Okla. July 3, 2025).  Sanctions are appropriate because filing briefs created using generative artificial intelligence without verifying the accuracy of legal citations or the substance of arguments is inconsistent with Rule 11(b)'s duty to make an inquiry that is reasonable under the circumstances.

Additionally, if a party uses generative artificial intelligence to prepare briefs filed in this case, N.D. L. Civ. R. 7.2(f)(1) requires a specific and conspicuous disclosure on the first page of that brief.  The rule provides that the absence of such a disclosure operates as a certification "that no part of the brief was prepared using generative artificial intelligence."  N.D. Tex. L. Civ. R. 7.2(f)(3).

The undersigned expects Anderson to diligently check the accuracy of his briefs filed in this case and expects him to comply with the Federal Rules of Civil Procedure and local court rules.  Any false certification under Rule 11(b) or Local Rule 7.2 may result in sanctions, which could include monetary penalties or dismissal of this lawsuit.

## V.  RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the District Judge **DENY** Plaintiff's Motion to Remand (Dkt. No. 8).

**SO RECOMMENDED** on October 13, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## **NOTICE OF RIGHT TO OBJECT**

A copy of these findings, conclusions, and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).